*E-Filed 6/4/10*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANGELO ANTONIO SOLANO ESCALANTE,<br><br>　　　　Petitioner,<br><br>　v.<br><br>ROBERT A. HOREL, Warden,<br><br>　　　　Respondent.<br>　　　　　　　　　　　　　　　　／ | No. C 08-4664 RS (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

This is a federal habeas corpus action filed by a *pro se* state prisoner pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is DENIED.

## BACKGROUND

In 2006, a San Mateo County Superior Court jury found petitioner guilty of second degree murder and found true a sentencing enhancement for the personal use of a weapon. (Ans., Ex. F at 1.) The trial court sentenced petitioner to fifteen years to life for the murder conviction and a one year term for the weapon enhancement. After conviction, petitioner sought, and was denied, relief on direct state review. It appears that petitioner did not seek

state habeas relief.

Evidence presented at trial shows that petitioner, who was accompanied by witness Luis Gutierrez, stabbed the victim, Steven Lent, an acquaintance. The state appellate court summarized the relevant facts as follows:

> Around noon on September 3, 2004, Gutierrez drove his car to pick up [petitioner]. [Petitioner] told Gutierrez he needed to see Steven Lent, a mutual acquaintance, because [petitioner] believed Lent had taken some of his property. Lent was a Norteño and had gang-related tattoos. [Petitioner] said he had a weapon with him for protection, because he feared that Lent might be armed. [Petitioner] was often drunk, but that day he was in worse condition than usual.
>
> When they picked up Lent, [petitioner] moved to the back seat and Lent sat in the front passenger seat. They drove to Albertson[']s because [petitioner] said he wanted to buy batteries. Gutierrez and Lent waited in the car. [Petitioner] came back to the car in about 10 minutes, empty-handed. He got back in the car and began yelling at Gutierrez and Lent, asking why they had taken him to Albertson[']s, because he was not allowed in the store. Lent told [petitioner] to shut up. As Gutierrez was driving out of the lot, [petitioner] suddenly grabbed Lent by the neck. After some confusion, Gutierrez realized [petitioner] had stabbed Lent in the neck. Lent was gasping for air, and then he stopped moving and Gutierrez knew he was dead. Gutierrez testified that his mind went blank and he was not thinking. He turned into an alley, grabbed the knife and threw it into some bushes. He identified a knife in court as the one he had thrown out.
>
> [Petitioner] began searching Lent's body, but when he determined that Lent had no money, he began hitting the body. [Petitioner] also took Lent's shoes. Gutierrez testified that [petitioner] seemed to have "lost his mind," and that this was not like him. [Petitioner] told Gutierrez to drive to McLaren Park, where [petitioner] pulled out and left the body. When [petitioner] got back in the car, Gutierrez slapped him and asked him why he did this. He drove [petitioner] back to East Vista Park, and when he saw the blood on his car became angry and punched [petitioner].

(Ans., Ex. F at 1–2.)

Petitioner alleges a single claim for relief, which is that the trial court violated his right to due process by failing to instruct the jury that an accomplice's testimony must be corroborated and viewed with caution.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in

violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

## DISCUSSION

Petitioner claims that the trial court violated his right to due process by failing *sua sponte* to instruct the jury with CALCRIM No. 334, which states that an accomplice's testimony must be corroborated with independent evidence and viewed with caution. (Pet. at 7.)

//
//

The state appellate court recounted events in the trial court as follows:

> It is well established that whenever there is substantial evidence from which a jury might conclude that a witness is an accomplice, the court has a *sua sponte* duty to instruct the jury in accordance with the principles set forth in CALCRIM No. 334.  (*People v. Boyer* (2006) 38 Cal.4th 412, 466.)  In a conference on jury instructions, the [trial] court stated it was not going to give this instruction because the parties had discussed at length whether Gutierrez could be considered an accomplice, and had agreed that "it's not either side's theory that Mr. Gutierrez was an accomplice." [Petitioner] did, however, argue to the jury that it was Gutierrez, not [petitioner], who killed Lent.

(Ans., Ex. F at 3.)  The state appellate court went on to explain that the "purpose of this caution [CALCRIM No. 334] is simply to admonish the jury not to 'accept the words of an accomplice at face value, without any presumption of truthfulness and candor, or upon the same standard as that applied to other witnesses.'"  (*Id.* at 5 (quoting *People v. Gordon*, 10 Cal.3d 460, 471 (1973).)

The state appellate court rejected petitioner's claim, finding that if there was error, such error was harmless.  Any error was harmless, the state court explained, because there was "ample corroboration" of Gutierrez's testimony through petitioner's own statements to "the police admitting that he was angry at Lent for stealing his property, that he stole a knife at Albertsons and hid it under his shirt, [ ] that he stabbed Lent in the neck and took his shoes."  (*Id.* at 4.)  Petitioner also led the police to the place where he hid the shoes.  (*Id.*)  Furthermore, the state appellate court ruled that even if the trial court erred in failing to give the instruction, that jury had received an instruction similar enough to CALCRIM No. 334 to render the giving of CALJIC No. 334 superfluous:

> The specific admonishment that Gutierrez's testimony should be viewed with caution if the jury determined he was an accomplice would have added little to the many reasons for distrusting his testimony that defense counsel was able to argue under the instructions given.  Defense counsel argued that Gutierrez was testifying under a grant of immunity, that he was at the scene, helped to conceal or destroy evidence, delayed in reporting the crime, and many other factors. The jury nonetheless either determined that Gutierrez was credible, or rejected his testimony, but credited [petitioner's] admissions in his statement to the police.

(*Id.* at 5.)

The trial court gave the jury several instructions regarding witness credibility, including CALCRIM Nos. 226 and 316. CALCRIM No. 226 instructed the jury that it could consider whether a witness had a "personal interest in how the case is decided," or was "engaged in other conduct that reflects on his or her credibility," or was "promised immunity or leniency in exchange for his or her testimony." (*Id.*, Ex. A at 10.) CALCRIM No. 316 states that in evaluating a witness's credibility, a jury could consider the fact that a witness had committed a crime or other misconduct. (*Id.* at 17.)

A state trial court's failure to give an instruction does not alone raise a ground cognizable in federal habeas corpus proceedings. *Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988). The omission of an instruction is less likely to be prejudicial than a misstatement of the law. *Walker v. Endell*, 850 F.2d 470, 475–76 (9th Cir. 1987). A habeas petitioner whose claim involves failure to give a particular instruction, as opposed to a claim that involves a misstatement of the law in an instruction, bears an "especially heavy burden." *Villafuerte v. Stewart*, 111 F.3d 616, 624 (9th Cir. 1997) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)).

Furthermore, the failure of a trial court to give an instruction *sua sponte* about the unreliability of accomplice testimony does not necessarily constitute plain error requiring a reversal. *See United States v. Bosch*, 914 F.2d 1239, 1247 (9th Cir. 1990). The need for the instruction must be analyzed in light of the circumstances in the case. Other credibility instructions combined with arguments by counsel might make the cautionary instruction unnecessary. *Id.* at 1248. Whether a constitutional violation has occurred will depend upon the evidence in the case and the overall instructions given to the jury. *See Duckett v. Godinez*, 67 F.3d 734, 745 (9th Cir. 1995).

Petitioner's claim is without merit. First, he invited the error, if indeed there was error. As the record reflects, the trial court declined to issue an instruction regarding witness credibility because the prosecutor and defense counsel both agreed that Gutierrez was not an accomplice, a conclusion supported by the record which indicates that the attack on Lent

came as a surprise to Gutierrez.  Second, the evidentiary safeguards provided by CALCRIM No. 334 were indeed present in the record.  Specifically, Gutierrez's testimony was corroborated by petitioner's own statements that that he "was angry at Lent for stealing his property, that he stole a knife at Albertson[']s and hid it under his shirt, [ ] that he stabbed Lent in the neck and took his shoes."  Third, looking at the instructions as a whole, if error occurred, it was harmless.  Other instructions, specifically CALCRIM Nos. 226 and 316, guided the jury to evaluate Gutierrez's testimony in light of the fact of his involvement in the crime and that he was testifying in exchange for immunity from prosecution.  On that record, petitioner's claim must be DENIED.

## CONCLUSION

The state court's adjudication of the claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Accordingly, the petition is DENIED.

A certificate of appealability will not issue.  Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Petitioner may seek a certificate of appealability from the Court of Appeals.

The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

DATED: June_4_, 2010

RICHARD SEEBORG
United States District Judge